ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
NOV 7 2007
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| Ira Green, Inc. | ) | |
| 177 Georgia Avenue | ) | |
| Providence, RI 02905 | ) | |
| | ) | 07-782 C |
| Plaintiff | ) | |
| | ) | USCFC No. ________ |
| v. | ) | |
| | ) | |
| THE UNITED STATES | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**COMPLAINT**

**COMES NOW** Plaintiff, Ira Green, Inc. ("Green"), by and through undersigned counsel, and for its Complaint against Defendant, the United States, alleges as follows:

**Jurisdiction and Standing**

1. This Court has jurisdiction over Counts I and II of this matter under 28 U.S.C. §1491 (a)(1) (a)(2) and 41 U.S.C. §§ 605(c)(1), (c)(3), and (c)(5) and 609 (the "Contract Disputes Act" or the "CDA"). Under those Counts Plaintiff seeks monetary damages for breach of a contract (the "Contract") between Plaintiff, Ira Green (hereinafter "Plaintiff" or "Green"), and the Navy Exchange Service Command ("NEXCOM"). Green submitted a CDA claim on May 1, 2007. On August 29, 2007 the Contracting

Officer issued a Final Decision that denied Green's claim, and Green is commencing this action within one year thereafter.

2. This Court has jurisdiction over Count III of this matter under 28 U.S.C. §1491(b). Under Count III, Plaintiff seeks declaratory relief concerning NEXCOM's apparent intent to violate the Competition in Contracting Act, 10 U.S.C. §2304 (a) ("CICA") by failing to engage in full and open competition to obtain the goods and services covered by Green's Contract.

3. Green has standing to allege the CICA violations asserted herein. Green has previously provided the goods and services at issue. But for NEXCOM's continued violation of CICA, Green would compete for future procurements. Green stands a substantial chance of an award in the event that this Court finds that NEXCOM's actions continue to violate CICA and directs NEXCOM to conduct a full and open competition for the goods and services.

**Factual Background**

Nature of the Action

4. Counts I and II herein concern monetary damages incurred by Green as a result of the NEXCOM's breach of an express contract between the parties (the "Contract"). Prior to execution of the Contract, NEXCOM had procured the items and services, including Navy Ratings Badges, to the Northeast Uniform Centers ("Uniform Center" or "Uniform Centers"), including the Uniform Center in Newport, Rhode Island ("NEX Newport") through separate contracts with Vanguard Industries ("Vanguard").

5. In April 2005, NEXCOM and Green executed an agreement whereby NEXCOM agreed that Green would sell and provide certain items and services, including Navy

Ratings Badges, to Uniform Centers until such time that a competitive solicitation covering such sales and services to Uniform Centers worldwide was issued and awarded.

6. NEXCOM breached the Contract on September 1, 2006 by (1) discontinuing the Green line of insignia at the NEX Newport location as of October 1, 2006 and (2) informing Green that it would no longer be buying Navy Ratings Badges from Green for any of the Uniform Centers. To date NEXCOM has discontinued purchasing any of Green's Navy Ratings Badges and line of insignia at NEX Newport and has also discontinued purchasing any of Green's Navy Ratings Badges and line of insignia at several of the other Northeast Uniform Centers. These actions have caused Green to incur damages in the amount of $90,000, which includes (1) lost revenues based on Green's 2005 sales to NEX Newport and interest on such revenue; (2) costs associated with Green's inventory that was manufactured and procured to support the insignia program at NEX Newport; and (3) costs associated with Green's inventory of Navy Ratings Badges that NEXCOM no longer purchases.

7. Green made numerous attempts to resolve this matter through correspondence with NEXCOM. When those actions proved unsuccessful, Green was forced to file a claim and request a Contracting Officer's Final Decision on May 1, 2007. In a Final Decision dated August 29, 2007, NEXCOM Contracting Officer Terry Nichols denied Green's claim in its entirety.

8. After NEXCOM breached the Contract, NEXCOM then violated CICA by continuing to utilize Vanguard on a sole-source basis to provide the sales and services at the Uniform Centers without obtaining full and open competition.

The Contract at Issue

9. On or about April 4, 2005, Green and NEXCOM memorialized the terms of the Contract through a document entitled "Ira Green / Nexcom Agreement on Northeast Uniform Centers."

10. The Contract was executed by Green's President, Michael McAllister, on April 5, 2005 and by Mark O. Winge, Divisional Merchandise Manager, Uniforms of Nexcom, on April 7, 2005.

11. The Contract required Green to assume responsibility for "providing and servicing insignia, embroidery and related accessories to six Uniform Centers in the Northeast."

12. Vanguard previously provided the goods and services covered by the Contract.

13. The Contract specifically provided that NEXCOM intended for Green to provide the applicable goods and services until NEXCOM had conducted a new best-value procurement by stating in relevant part:

> Effective in the April/May 2005 time frame Ira Green will begin assuming responsibility for providing and servicing insignia, embroidery and related accessories to six Uniform Centers in the Northeast. These stores include Newport, New London, Brunswick, Kittery, Scotia and Saratoga Springs. Nexcom's intention is to have Ira Green continue to supply product and vendor service to these locations under the terms of this agreement until the effective date of awards for Uniform Centers worldwide on these commodities. Award will likely be made to multiple resources on a "best value" basis.

14. One of the Uniform Centers that Green serviced under the terms of the Contract is located in Newport, Rhode Island.

15. The term of the Contract was to run "until the effective date of awards for Uniform Centers worldwide on these commodities." According to the terms of the Contract, such awards would likely be made to "multiple resources on a 'best value' basis."

16. NEXCOM's express purpose in entering into the Contract was to induce Green to enter the NEXCOM market so as to enhance NEXCOM's ability to achieve competition for the contract items at all of its exchanges. Green specifically relied on this inducement in entering the contract and incurred significant inventory costs related thereto.

NEXCOM's Breach of the Contract

17. On September 1, 2006, NEXCOM representative Terry Nichols notified Green by electronic mail that Green's line of insignia at the NEX Newport location would be discontinued as of October 1, 2006.

18. On November 15, 2006, NEXCOM informed Green through another electronic mail communication that NEXCOM would no longer purchase Green's Navy Ratings Badges for any of its Uniform Centers. The reason provided for such action was that NEXCOM allegedly had "significant liabilities with TFU ratings badges" and did not need "two suppliers in this category." According to the electronic mail message, "any Ira Green rating badge will be planned for phase out in 2007 and converted to Vanguard."

19. On December 26, 2006, Green's counsel, Mr. James S. Phillips, sent a letter to Terry Nichols regarding NEXCOM's decision to end Green's line of insignia at NEX Newport. Mr. Phillips stated that NEXCOM's unilateral action to cancel Green's line of insignia represented a breach of the Contract.

20. NEXCOM counsel Michael D. Rigg responded to Mr. Phillips' December 26, 2006 letter on January 4, 2007 and alleged that Green's "poor performance in Newport" represented a breach of the Contract, which justified NEXCOM's actions. Green specifically denies any such breach of the Contract on its part.

Submission of the Underlying Claim

21. On May 1, 2007, Green submitted a claim pursuant to and in accordance with the CDA and requested a Contracting Officer's decision. The claim was submitted to Terry Nichols as the successor to the Contracting Officer who entered into the Contract, as well as the Contracting Officer that had cognizance of NEXCOM's breach of the Contract.

22. In its May 1, 2007 claim, Green requested damages in the amount of $90,000 to remedy Green's damages resulting from NEXCOM's breach of the contract, which includes (1) lost revenues based on Green's 2005 sales to NEX Newport and interest on such revenue; (2) costs associated with Green's inventory that was manufactured and procured to support the insignia program at NEX Newport; and (3) costs associated with Green's inventory of Navy Ratings Badges that NEXCOM no longer purchases.

23. NEXCOM issued a Final Decision dated August 29, 2007 denying Green's claims.

**Count I (Lost Revenue Based on Ira Green's 2005 Sales to NEX Newport and Associated Interest)**

24. The allegations in Paragraphs 1 through 23 above are incorporated by reference and reasserted in Count I herein.

25. The Contract required Green to assume responsibility "for providing and servicing insignia, embroidery and related accessories to six Uniform Centers in the Northeast," including NEX Newport.

26. On September 1, 2006, NEXCOM was notified that Green's line of insignia at the NEX Newport location would be discontinued as of October 1, 2006.

27. Based on Green's 2005 sales to NEX Newport, Green estimates that it would have obtained net revenues consisting of recovered G&A expenses and profit of at least $25,000, plus interest, which increases daily.

28. Green has never been compensated for its lost revenue at NEX Newport as a result of NEXCOM's breach of the Contract.

29. The Government is obligated to reimburse Green for its lost revenue, plus interest, that has resulted from NEXCOM's breach of the Contract.

**Count II (Costs Incurred Through Manufacturing and Procurement of Navy Ratings Badges and Shoulder Boards/Collar Insignia Sold Exclusively at NEX Newport)**

30. The allegations in Paragraphs 1 through 29 above are incorporated by reference and reasserted in Count II herein.

31. The Contract required Green to assume responsibility "for providing and servicing insignia, embroidery and related accessories to six Uniform Centers in the Northeast."

32. Green's specific responsibilities under the Contract included (1) manufacture and/or procurement of Navy Ratings Badges for the insignia program at all NEX Northeast

Uniform Centers; and (2) providing shoulder boards and collar insignia to be sold at NEX Newport.

33. On September 1, 2006, NEXCOM was notified that Green's line of insignia at the NEX Newport location would be discontinued as of October 1, 2006.

34. On September 15, 2006, Green was informed that NEXCOM would no longer purchase Green's Navy Ratings Badges for any of its Uniform Centers.

35. Prior to being informed that NEXCOM would no longer purchase Green's Navy Ratings Badges for any of its Uniform Centers, Green expended approximately $65,000 on the inventory of Navy Ratings Badges that were previously sold at all Uniform Centers and the shoulder boards and collar insignia sold exclusively at NEX Newport.

36. As a result of NEXCOM's action to discontinue the NEX Newport portion of the Contract and stop purchasing Green's Navy Ratings Badges, this inventory will not be used and sold at NEX Newport, or in the case of the Navy Ratings Badges, at any Uniform Centers.

37. Green has never been compensated for the money it expended in procuring and/or manufacturing this unused inventory.

38. The Government is obligated to reimburse Green for this unused inventory since damages arising from such unused inventory are foreseeable and appropriate.

**Count III NEXCOM's Violation of CICA**

39. The allegations in Paragraphs 1 through 38 above are incorporated by reference and reasserted in Count III herein.

40. The terms of the Contract stated that NEXCOM's future awards would be made on a competitive basis based on the best value to the Government.

41. Upon information and belief, including the information contained in the September 1, 2006 e-mail communication to Green, NEXCOM has transferred all responsibilities previously held by Green to Vanguard without attempting to obtain full and open competition.

42. Upon information and belief, NEXCOM has continued to utilize Vanguard on a sole source basis without providing full and open competition for the sales and services to Uniform Centers, and in violation of the Contract.

43. Upon information and belief, the annual value of the NEXCOM market for the Contract items is at least eleven million dollars ($11.0 Mil.)

44. Upon information and belief,, Vanguard's prices for the Contract items is I on average ten percent (10%) higher than green's prices.

45. NEXCOM's actions in breaching the Contract with Green and awarding Vanguard all responsibilities previously delineated under such Contract without attempting to obtain full and open competition was a violation of CICA.

46. Upon information and belief, NEXCOM routinely provides other selling opportunities exclusively to Vanguard in violation of CICA.

**WHEREFORE,** Plaintiff Green respectfully requests that the Court award Plaintiff the following:

- Lost revenue totaling $25,000, plus interest, as specified under Count I;
- Costs incurred through the manufacture and/or procurement of unused inventory totaling $65,000, as specified under Count II;

- A declaration that NEXCOM actions, as specified under Count III constitute a continuing breach of CICA; and an
- Injunction directing that NEXCOM conduct full and open competition for the sales and services to Uniform Centers worldwide.

Respectfully submitted,

Christopher M. Johnson
CENTRE LAW GROUP, LLC
1953 Gallows Road, Suite 650
Vienna, VA 22182
Counsel for Plaintiff, Ira Green, Inc.
(703) 288-2800
Fax: (703) 288-4868

Date: 11/5/07

Of Counsel: James S. Phillips
Brian C. Caney