No. 07-782C
(Senior Judge Hodges)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

IRA GREEN, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

PATRICIA M. McCARTHY
Assistant Director

DAWN E. GOODMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530
Tel: (202) 616-1067
Fax: (202) 514-8624

May 1, 2008

Attorneys for Defendant

**TABLE OF CONTENTS**

ARGUMENT . . . . . 2

I. Ira Green Fails To Establish The Court's Jurisdiction To Entertain Its Statutory Claim Against The United States. . . . . 2

A. Ira Green's Statutory Claim Against The United States Is Barred Because Congress Has Establish NEXCOM As A NAFI . . . . . 2

1. NEXCOM's Enabling Legislation Clearly Establishes It As A NAFI. . . . . 3

2. The Enumerated NAFIs In The Tucker Act Include NEXCOM. . . 5

B. Discovery Is Unnecessary To Establish Whether NEXCOM Is A NAFI. . 7

1. Discovery Is Unnecessary Where Congress Has Clearly Established NEXCOM As A NAFI . . . . . 8

2. The Documents Cited By Ira Green Do Not Support Ira Green's Argument That NEXCOM Is Not A NAFI . . . . . 8

II. Ira Green Fails To Establish That The Agreement Requires The Government To Order Merchandise From Ira Green . . . . . 10

A. The Plain Language Of The Agreement Does Not Require The Government To Order Merchandise From Ira Green . . . . . 10

B. The Court Should Not Consider Contemporaneous Information In Deciding Whether The Agreement Is A Contract . . . . . 13

CONCLUSION. . . . . 14

# TABLE OF AUTHORITIES

## CASES

AINS, Inc. v. United States,
365 F.3d 1333 (Fed. Cir. 2004). . . . . . . . . . 2, 3, 4, 5

Ace-Federal Reporters, Inc. v. Barram,
226 F.3d 1329 (Fed. Cir. 2000). . . . . . . . . . 11, 12

Coyle's Pest Control, Inc. v. Cuomo,
154 F.3d 1302 (Fed. Cir. 1998). . . . . . . . . . 12

Dart Advantage Warehousing, Inc. v. United States,
52 Fed. Cl. 694 (Fed. Cl. 2002). . . . . . . . . . 13

Davis v. Mich. Dep't. of the Treasury,
489 U.S. 803 (1989).. . . . . . . . . . 6

Duncan v. Walker,
533 U.S. 167 (2001).. . . . . . . . . 7

Furash & Co. v. United States,
252 F.3d 1336 (Fed. Cir. 2001). . . . . . . . . . 2, 3, 8

Grumman Data Sys. Corp. v. Dalton,
88 F.3d at 990 (Fed Cir. 1996).. . . . . . . . . 13

Hanlin v. United States,
214 F.3d 1319 (Fed. Cir. 2000). . . . . . . . . . 7

J. Cooper & Assoc., Inc. v. United States,
53 Fed. Cl. 8 (2002) . . . . . . . . . . 11, 12, 13

Kyer v. United States,
369 F.2d 714 (Ct. Cl. 1966). . . . . . . . . . 2

L'Enfant Plaza Props., Inc. v. United States,
668 F.2d 1211 (Ct. Cl. 1982). . . . . . . . . . 2, 3, 8

Made in the USA Found. v. United States,
51 Fed. Cl. 252 (2001). . . . . . . . . . 4, 6

Market Co. v. Hoffman,
101 U.S. 112 (1879). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Mason v. United States,
615 F.2d 1343 (Ct. Cl. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

McDonald's Corp. v. United States,
926 F.2d 1126 (Fed. Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

Modern Sys. Tech. Corp. v. United States,
979 F.2d 200 (Fed. Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Morton v. Mancari,
417 U.S. 535 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Siegal v. United States,
38 Fed. Cl. 386 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Southern Foods, Inc. v. United States,
76 Fed. Cl. 769 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

Taylor v. United States,
303 F.3d 1357 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Total Med. Mgmt, Inc. v. United States,
104 F.3d 1314 (Fed. Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Am. Home Assurance Co.,
No 94 Civ. 7621(LMM),
2003 WL 21436219 (S.D.N.Y. June 19, 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Hopkins,
427 U.S. 123 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 5

USA Choice Internet Services, LLC v. United States,
– F.3d –
2008 WL 1722192 (Fed. Cir. Apr. 15.2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Zaccardelli v. United States,
68 Fed. Cl. 426 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## STATUTES

10 U.S.C. § 2304(a). . . . . . . . . . . . . . . . . . . . 2

10 U.S.C. § 2481. . . . . . . . . . . . . . . . . . . . 4

10 U.S.C. § 2488(f). . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1491(a)(2).. . . . . . . . . . . . . . . . . . . . 2, 5, 6

41 U.S.C. § 601, et seq.. . . . . . . . . . . . . . . . . . . . 6

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| IRA GREEN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 07-782C |
| | ) | |
| v. | ) | (Senior Judge Hodges) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this reply to plaintiff's response to its motion to dismiss the complaint. In our opening brief, we established that this Court lacked subject matter jurisdiction to entertain a statutory claim against the Navy Exchange Service Command ("NEXCOM"), a non-appropriated fund instrumentality ("NAFI"), and that Counts I and II should be dismissed for failure to state a claim because plaintiff, Ira Green, Inc. ("Ira Green"), cannot establish the existence of a contract. In its response, Ira Green alleges that NEXCOM is not a NAFI, or, alternatively, that discovery is required to determine if NEXCOM is a NAFI. It contends further that both the plain meaning of the agreement and contemporaneous information establish that the agreement between the parties is a contract that requires the Government to place orders with Ira Green. For the reasons set forth below, none of plaintiff's arguments is availing and the complaint should be dismissed.

# ARGUMENT

## I. Ira Green Fails To Establish The Court's Jurisdiction To Entertain Its Statutory Claim Against The United States

### A. Ira Green's Statutory Claim Against The United States Is Barred Because Congress Has Establish NEXCOM As A NAFI

Ira Green's claim that NEXCOM violated the Competition in Contracting Act ("CICA"), 10 U.S.C. § 2304(a), is barred by the non-appropriated funds doctrine. This doctrine provides that absent some specific provision to the contrary, this Court lacks jurisdiction to entertain any action in which appropriated funds could not be used to pay a resulting judgment. AINS, Inc. v. United States, 365 F.3d 1333, 1336-39 (Fed. Cir. 2004); Taylor v. United States, 303 F.3d 1357, 1360 (Fed. Cir. 2002); Furash & Co. v. United States, 252 F.3d 1336, 1339 (Fed. Cir. 2001) (citing United States v. Hopkins, 427 U.S. 123, 125-26 (1976); L'Enfant Plaza Props., Inc. v. United States, 668 F.2d 1211 (Ct. Cl. 1982); Kyer v. United States, 369 F.2d 714 (Ct. Cl. 1966)).

Ira Green concedes this Court lacks jurisdiction to entertain Count III of the complaint if NEXCOM is a NAFI. Resp. at 6-7 (citing AINS, 365 F.3d at 1342; Southern Foods, Inc. v. United States, 76 Fed. Cl. 769, 774-76 (2007)).[1] Ira Green argues, however, that NEXCOM is not a NAFI. To support this contention, it argues that while Navy exchanges are enumerated NAFIs in the Tucker Act, 28 U.S.C. § 1491(a)(2), NEXCOM, the entity responsible for management and oversight of the exchanges, is not. Because Congress clearly established NEXCOM as a NAFI in both NEXCOM's enabling legislation and the Tucker Act, Ira Green's arguments are without merit and Ira Green's statutory claim against NEXCOM should be

[1] "Resp. ___" refers to plaintiff's response filed April 4, 2008. "PA___" refers to the appendix attached to plaintiff's response filed April 4, 2008. "RA__" refers to the appendix attached to this reply.

dismissed for lack of jurisdiction.

1. NEXCOM's Enabling Legislation Clearly Establishes It As A NAFI

Pursuant to AINS, a Governmental instrumentality is a NAFI if:

> (1) It does not receive its monies by congressional appropriation; (2) It derives its funding primarily from its own activities, services, and product sales; (3) Absent a statutory amendment, there is no situation in which appropriated funds could be used to fund the federal entity; and (4) There is a clear expression by Congress that the agency was to be separated from general federal revenues.

365 F.3d at 1342 (internal citations omitted). Once Congress creates a NAFI, only an express statute may waive the sovereign immunity of the United States and give this Court jurisdiction to entertain a claim against a NAFI. Taylor, 303 F.3d at 1361 (holding agency policy does not impact an instrumentaly's NAFI classification because "only an express statute may waive the sovereign immunity of the United States"). The sole issue is whether Congress "'intended that the activity resulting in the claim was not to receive or be funded from appropriated funds;' that is, there must be a 'firm indication by Congress that it intended to absolve the appropriated funds of the United States from liability for acts of the agency.'" Furash, 252 F.3d at 1339 (quoting L'Enfant Plaza, 668 F.2d at 1212). Because Congress expressly created NEXCOM as a NAFI and has not enacted a statute to the contrary or provided an exception for a CICA claim against NEXCOM, Count III of the complaint should be dismissed for lack of jurisdiction.

NEXCOM's enabling legislation undisputedly establishes that NEXCOM is a NAFI under the AINS test. Title 10, United States Code, section 2481 provides for the creation of both the defense commissary and exchange systems. In discussing the relationship between commissaries and exchange stores and expressly prohibiting their merger or consolidation absent

an Act of Congress, 10 U.S.C. § 2488(f) specifically defines "nonappropriated fund instrumentalities" as "the Army and Air Force Exchange Service, Navy Exchange Service Command, Marine Corps exchanges, or any other instrumentality of the United States under the jurisdiction of the Armed Forces which is conducted for the comfort, pleasure, contentment, or physical or mental improvement of members of the Armed Forces." Further, while, § 2483 details the use of appropriated funds by commissary stores, there is no analogous legislation for use of appropriated funds by military exchanges.

It is clear from this legislation, 10 U.S.C. §§ 2481-2495b, that Congress intended the commissaries to act using appropriated funds and the exchanges to function entirely independently, using nonappropriated funds. In light of the express language of NEXCOM's enabling legislation, NEXCOM is a NAFI absent further action by Congress establishing otherwise. See Taylor, 303 F.3d at 1361.

In addition to the legislation cited above, both the United States Court of Appeals for the Federal Circuit and this Court have confirmed that Congress intended to create NEXCOM and its predecessor, the Navy Resale and Services Support Office ("NAVRESSO"), as NAFIs. McDonald's Corp. v. United States, 926 F.2d 1126, 1128, 1133 (Fed. Cir. 1991) (holding NAVRESSO to be a NAFI); Made in the USA Found. v. United States, 51 Fed. Cl. 252, 254 n.3 (2001) ("Navy Exchange Service Command and Army Air Force Exchange Services [] are non-appropriated fund instrumentalities"); Siegal v. United States, 38 Fed. Cl. 386, 387, 389-90 (1997) (plaintiff employed by Navy exchange, "which is a component of the Navy Exchange Service Command, a nonappropriated fund instrumentality of the U.S. Department of the Navy"). Further, in Hopkins, one of the cases cited in AINS, the Supreme Court held that the Army and

Air Force Exchange Service ("AAFES"), the Army/Air Force equivalent of NEXOM, was a NAFI. 427 U.S. at 127; accord AINS, 365 F.3d at 1339, 1342.

Ira Green attempts to circumvent this well-settled precedent by citing Southern Foods, 76 Fed. Cl. at 774-76. Southern Foods is not binding on this Court and squarely conflicts with the Federal Circuit's decision in Taylor, which is controlling on this Court. As noted above, the Federal Circuit in Taylor recognized that agency's policies are irrelevant to whether Congress intended to create a NAFI because only Congress may waive the United States's sovereign immunity. Taylor, 303 F.3d at 1361. We, therefore, respectfully disagree with the holding in Southern Foods that the United States Army Community and Family Support Center was not a NAFI because an Army regulation indicated that Army's NAFIs can receive limited support from appropriated funds. Southern Foods, 76 Fed. Cl. at 774-76. Taylor controls and precludes the application of Southern Foods to this case.

For these reasons, Ira Green's argument that NEXCOM is not a NAFI is baseless. It is settled that Congress established NEXCOM as a NAFI and that Congress has not amended NEXCOM's enabling legislation so as to alter NEXCOM's NAFI status or to allow suits for violation of CICA against NEXCOM in this Court. Therefore, this Court lacks jurisdiction to entertain the CICA claim, and Count III of the complaint should be dismissed.

2. The Enumerated NAFIs In The Tucker Act Include NEXCOM

Even assuming that NEXCOM's enabling legislation was ambiguous as to Congress's intent to establish NEXCOM as a NAFI, the fact that Congress specifically included the Navy exchanges in the list of enumerated NAFIs in the Tucker Act, 28 U.S.C. § 1491(a)(2), defeats Ira Green's argument that NEXCOM is not a NAFI because, unlike the Navy exchanges it oversees,

NEXCOM is not specifically listed in § 1491. The Federal Circuit has expressly rejected this argument. Additionally, under the traditional principles of statutory construction, this argument is unavailing.

Ira Green's position that NEXCOM is not a NAFI because it was not specifically listed in § 1491 was expressly rejected by the Federal Circuit. In McDonald's, after holding that NAVRESSO was a NAFI, the Federal Circuit addressed whether NAVRESSO was covered by the enumerated NAFI provision in the Tucker Act. The court held that the Tucker Act "waiver of sovereign immunity to NAFIs was intended to apply to supervisory organizations such as NAVRESSO." 926 F.2d at 1128, 1133; see also United States v. Am. Home Assurance Co., No 94 Civ. 7621(LMM), 2003 WL 21436219, at *1 (S.D.N.Y. June 19, 2003) ("NAVRESSO's successor, NEXCOM, . . . is, the parties agree, a nonappropriated fund instrumentality"). Similarly, in Made in the USA, this Court determined that the plaintiff, an apparel manufacturer, could bring a claim involving NEXCOM and the AAFES under the Contract Disputes Act ("CDA"), 41 U.S.C. § 601, et seq., if it satisfied the CDA's prerequisites, because both NEXCOM and the AAFES are enumerated NAFIs in the Tucker Act, § 1491(a)(2). See 51 Fed. Cl. at 254. Accordingly, Ira Green's argument that NEXCOM is not a NAFI is baseless.

Ira Green's argument that NEXCOM is not a NAFI because it is not specifically listed in the Tucker Act is further undermined by the basic principles of statutory construction. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Davis v. Mich. Dep't. of the Treasury, 489 U.S. 803, 809 (1989); accord USA Choice Internet Services, LLC v. United States, -- F.3d --, 2008 WL 1722192, at *9 (Fed. Cir. Apr. 15, 2008)). Additionally, it is the

cardinal principle of statutory construction that "'a statute ought, upon the whole, be so construed that, if it can be prevented, no clause, sentence, or word, shall be superfluous, void, or insignificant.'" Duncan v. Walker, 533 U.S. 167, 174 (2001) (quoting Market Co. v. Hoffman, 101 U.S. 112 (1879)). "'[W]hen two statutes are capable of co-existence, it is the duty of the court, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" Hanlin v. United States, 214 F.3d 1319, 1321 (Fed. Cir. 2000) (quoting Morton v. Mancari, 417 U.S. 535, 551 (1974)).

Ira Green's proposed statutory interpretation violates these established canons of statutory contraction. Ira Green proffers that the inclusion of Navy exchanges and not NEXCOM in the Tucker Act essentially invalidated NEXCOM's enabling statute which clearly and unambiguously created NEXCOM as a NAFI. There is no indication that the language in the Tucker Act intended to invalidate NAFI enabling statutes. It follows, therefore, that absent an act by Congress amending both NEXCOM's enabling statute and the Tucker Act, Ira Green's position is inapposite.

Accordingly, Ira Green's argument that NEXCOM is not a NAFI because it is not specifically listed in § 1491 is without merit. Because Congress clearly intended to establish NEXCOM as a NAFI, the Court should dismiss Ira Green's statutory claim for lack of jurisdiction.

B. Discovery Is Unnecessary To Establish Whether NEXCOM Is A NAFI

Ira Green next argues that if the Court is inclined to hold that NEXCOM is a NAFI, then it should be afforded an opportunity to conduct discovery on this issue. Ira Green alleges that discovery is necessary because the documents attached to the Government's motion, specifically

the OPNAV instruction and the declarations, imply that NEXCOM may receive some appropriated funds which may tend to show that it is not a NAFI. Discovery is unnecessary and Ira's Green's request should be denied.

1. Discovery Is Unnecessary Where Congress Has Clearly Established NEXCOM As A NAFI

As discussed above, the sole issue is whether Congress has clearly established NEXCOM as a NAFI. Furash, 252 F.3d at 1339 (quoting L'Enfant Plaza, 668 F.2d at 1212). It is irrelevant whether Navy policies provide that NEXCOM may receive appropriated funds for certain activities. In Taylor, the Federal Circuit specifically rejected a similar request for discovery into agency policies because the agency policies were "irrelevant to the jurisdictional issue; only an express statute may waive the sovereign immunity of the United States." 303 F.3d at 1361. "While a factual inquiry into the financing structure of an entity is sometimes required to determine whether or not it is a NAFI," such discovery is not necessary where, as here, it is well-settled that Congress intended to establish NEXCOM as a NAFI. Zaccardelli v. United States, 68 Fed. Cl. 426, 430 (2005). Accordingly, discovery is unnecessary because OPNAV Instruction 5450.331 and the declarations attached to the Government's motion will not produce evidence that could undermine the clear intent of Congress in enacting NEXCOM's enabling legislation.

2. The Documents Cited By Ira Green Do Not Support Ira Green's Argument That NEXCOM Is Not A NAFI

Even if the extraneous documents cited by Ira Green could somehow undermine Congress's clear intent to establish NEXCOM as a NAFI, neither OPNAV Instruction 5450.311 nor the declarations attached to the Government's motion support Ira Green's argument that NEXCOM is not a NAFI.

Ira Green first attempts to create a need for discovery by arguing that OPNAV Instruction 5450.331 and the references cited therein, specifically the Navy Comptroller Manual ("NAVCOMPT") Manual, Volume 7, are documents solely within NEXCOM's possession and unavailable to Ira Green without discovery. Contrary to Ira Green's argument, OPNAV Instruction 5450.331, and all OPNAV instructions, are public record and are available via the internet.[2] Similarly, the most recent version of the NAVCOMPT Manual, referred to as the Department of the Navy Financial Management Policy Manual ("NFMPM"), is publicly available.[3]

Ira Green next contends that it requires discovery to explore the language of section b(2) of OPNAVINST 5450.331. This section does not support Ira Green's contention that NEXCOM is not a NAFI. Section b(2) states that the installation commanding officers, not NEXCOM's commanding officer, should use appropriated funds to effectively manage the services and support provided to the Navy exhcanges within the parameters established by the NAVCOMPT Manual, Volume 7. The instruction does not indicate that NEXCOM is, or could be, funded with appropriated funds. Further, a thorough review of the most recent edition of the NFMPM, a 443-

---

[2] The instructions of the Secretary of the Navy and the Chief of Naval Operations are readily accessible at http://doni.daps.dla.mil/default.aspx. Similarly, the directives and instructions of the Department of Defense are publically available at http://www.dtic.mil/whs/directives/.

[3] OPNAV Instruction 5450.311 was issued on May 14, 1998, when NAVCOMPT Manual, Volume 7 was in effect. On August 15, 1995, the NAVCOMPT Manual, Volume 7 was reissued in its entirety and retitled as the NFMPM. RA1, Forward to NFMPM. Since this document is voluminous and its contents are irrelevant to the issues raised in this case, it has not been attached to the appendix. The most recent edition is publically available at http://www.finance.hq.navy.mil/fmc/PDF/P_1000_chg_67.pdf.

page document, provides no support for Ira Green's argument that NEXCOM is not a NAFI.[4]

Finally, Ira Green argues that it requires discovery because the declarations attached to the Government's motion raise an issue as to whether Ira Green's merchandise was purchased with appropriated funds. Even if this issue were relevant and could undermine Congress's intent, contrary to Ira Green's argument, the declarations clearly establish that the merchandise, which fell within the E-1 department code, was purchased with nonappropriated funds. The declarations do not support Ira Green's contention that NEXCOM may not be a NAFI.

Because discovery is unnecessary where Congress has clearly established NEXCOM as a NAFI and the documents cited by Ira Green in no way undermine Congress's intent, the Court should deny Ira Green's request for discovery and dismiss Count III of the complaint for lack of jurisdiction to entertain a statutory claim against a NAFI.

## II. Ira Green Fails To Establish That The Agreement Requires The Government To Order Merchandise From Ira Green

### A. The Plain Language Of The Agreement Does Not Require The Government To Order Merchandise From Ira Green

Contrary to Ira Green's assertions, the "Ira Green/NEXCOM Agreement on Northeast Uniform Centers" (the "Agreement") is not a contract that requires the United States to purchase merchandise from Ira Green. As established in our motion to dismiss, the Agreement is nothing

[4] Ira Green again alleges that discovery is required because it can only obtain the NAVCOMPT Manual, Volume 7 through discovery. Like the Navy instructions and directives cited above, the NAVCOMPT Manual is a public document. OPNAV Instruction 5450.311 was issued on May 14, 1998, when NAVCOMPT Manual, Volume 7 was in effect. On August 15, 1995, the NAVCOMPT Manual, Volume 7 was reissued in its entirety and retitled as the NFMPM. RA1. Since this document is voluminous and its contents are irrelevant to the issues raised in this case, it has not been attached to the appendix. The most recent edition is publically available at http://www.finance.hq.navy.mil/fmc/PDF/P_1000_chg_67.pdf.

more than a set of ground rules by which NEXCOM would order merchandise from Ira Green and Ira Green would fulfill orders. It does not require NEXCOM to place orders with Ira Green, and Ira Green's obligation to provide uniforms stems only from future completed purchase orders submitted to Ira Green by NEXCOM, not from the terms of the Agreement.

Ira Green first argues that the plain language of the Agreement establishes that it is an enforceable contract against the Government containing offer, acceptance, consideration, and a signature by an authorized Government representative. Although these are the proper elements for creation of an enforceable contract, they are not present in this case. To the contrary, the cases Ira Green cites themselves demonstrate by analogy, that the Agreement does not establish that the Government had a duty to order from Ira Green because it lacks consideration and a basis to ascertain breach and damages, including any reference to a quantity of goods which must be purchased by NEXCOM.

Even assuming that the Agreement were a contract, rather than merely a basic agreement or basic ordering agreement as we demonstrated in our motion, the Agreement does not establish that the Government had a duty to order goods from Ira Green. In J. Cooper & Associates, Inc. v. United States, upon which Ira Green relies, the Court discussed the three categories of contracts with the Government for services or supplies: "'those for a definite quantity, those for an indefinite quantity and those for requirements.'" 53 Fed. Cl. 8, 16 (2002) (quoting Ace-Federal Reporters, Inc. v. Barram, 226 F.3d 1329, 1331 (Fed. Cir. 2000)). Because the Agreement does not require the Government to order a fixed, definitive quantity, it could only be either an indefinite quantity or requirements contract. Mason v. United States, 615 F.2d 1343, 1347 (Ct. Cl. 1980). An indefinite delivery, indefinite quantity ("IDIQ") contract is a "contract under

which the buyer agrees to purchase and the seller agrees to supply whatever quantity of goods the buyers chooses to purchase from the seller. It differs from a requirements contract in that under a requirements contract the buyer agrees to purchase all his requirements from the seller." Id. at 1346 n.5. Absent a clause stating a fixed minimum quantity or a requirement that the Government purchase all of its requirements from the contractor, indefinite quantity and requirements contracts are unenforceable. Coyle's Pest Control, Inc. v. Cuomo, 154 F.3d 1302, 1304 (Fed. Cir. 1998), accord J. Cooper, 53 Fed. Cl. at 17.

Although a contract is not unenforceable merely because it does not fit squarely into one of the three recognized categories of contracts, "'[t]o be valid and enforceable, a contract must have both consideration to ensure mutuality of obligation and sufficient definiteness so as to provide a basis for determining the existence of a breach and for giving an appropriate remedy.'" J. Cooper, 53 Fed. Cl. at 18 (quoting Ace-Federal, 226 F.3d at 1332) (additional internal citations omitted). It must be "'sufficiently definite to permit determination of breach and remedies.'" Total Med. Mgmt, Inc. v. United States, 104 F.3d 1314, 1320 (Fed. Cir. 1997) (quoting Modern Sys. Tech. Corp. v. United States, 979 F.2d 200, 202 (Fed. Cir. 1992)).

In its opposition, Ira Green ignores the absence of any specific terms in the Agreement regarding a fixed minimum quantity or a requirement that the Government purchase all of its needs from Ira Green. Even viewed as a potential contract, it is not clear whether the Agreement would be an IDIQ or requirements contract. Indeed, the Agreement provides for no consideration to ensure a mutuality of obligation and a basis to sufficiently ascertain breach and damages. It does not require NEXCOM to order items from Ira Green. Rather, the Agreement contains nothing more than guidelines by which NEXCOM would, if it chooses to place orders with Ira

Green, submit purchase orders to Ira Green and Ira Green would fulfill the orders. Based upon the terms of the Agreement, the Court should dismiss Count I and II of the complaint for failure to state a claim since the Agreement cannot be used to demand that the Government will purchase goods from Ira Green.

**B. The Court Should Not Consider Contemporaneous Information In Deciding Whether The Agreement Is A Contract**

Citing J. Cooper, Ira Green contends that the Court should consider contemporaneous information, specifically the affidavit of Michael McAllister, in deciding whether the Agreement is an enforceable contract. Resp. at 11. "When the terms of a contract are clear and unambiguous, there is no need to resort to extraneous circumstances for its interpretation." Dart Advantage Warehousing, Inc. v. United States, 52 Fed. Cl. 694, 700 (Fed. Cl. 2002). "A contract term is unambiguous when there is only one reasonable interpretation." Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 997 (Fed. Cir. 1996). Courts may not look to extrinsic evidence merely because the parties disagree in their interpretation of a contract clause. Dart, 52 Fed. Cl. at 700. Nor may courts look to extrinsic evidence to determine whether a contract is ambiguous. Id.

Here, the terms of the Agreement are unambiguous and do not require the use of extrinsic evidence to interpret them. For purposes of the Government's motion, the only issue is whether the clear and unambiguous terms of the Agreement create a contract enforceable against the Government. Therefore, the Court does not need to consider extrinsic evidence in making this legal determination.

Nevertheless, even if the Court considers this affidavit and converts our motion to

dismiss into a motion for summary judgment pursuant to RCFC 12(b),[5] judgment should be entered in favor of the Government because the affidavit raises no issues of material fact and, as we have demonstrated, the Agreement is unenforceable as a matter of law.

Mr. McAlister's affidavit does not purport to identify a minimum fixed quantity or requirements clause in the Agreement. PA1-3. The affidavit merely confirms the existence of an agreement between the parties to lay the ground rules by which Ira Green would fulfill orders from NEXCOM for merchandise and insignia. See PA2, ¶¶ 11, 15-16. Neither the Agreement nor Mr. McAlister's affidavit establishes a basis for Ira Green to demand that the Government will order items from Ira Green. At best, the Agreement is nothing more than an IDIQ, which cannot be used to create a Government duty which is not established by the Agreement.

Accordingly, Counts I and II of the complaint should be dismissed for failure to state a claim. Alternatively, if the Court considers Mr. McAlister's affidavit in reaching its decision, summary judgment should be entered in favor of the United States and against Ira Green on Counts I and II of the complaint.

## CONCLUSION

For these reasons, defendant respectfully requests that the Court dismiss plaintiff's complaint or alternatively, dismiss Count III of plaintiff's complaint and enter judgment in favor of the United States and against Ira Green on Counts I and II of plaintiff's complaint.

---

[5] RCFC 12(b) states, in relevant part: "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in RCFC 56."

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

s/ Dawn E. Goodman
DAWN E. GOODMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530
Tel: (202) 616-1067
Fax: (202) 514-8624

May 1, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 1st day of May, 2008, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Dawn E. Goodman
DAWN E. GOODMAN